**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

LATHAN MATRELL BARNETT,

    Defendant.

No. CR 02-4099-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO WITHDRAW PLEA OF GUILTY TO COUNT 1 OF THIRD SUPERSEDING INDICTMENT**

_____

**TABLE OF CONTENTS**

**I. INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . 3
   *C. Arguments Of The Parties* . . . . . . . . . . . . . . . . . . . 5

**II. ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *A. Foreclosure And Waiver Of The Motion* . . . . . . . . . . . . . . . . . 6
      *1. Foreclosure of the motion* . . . . . . . . . . . . . . . . . 7
      *2. Waiver of the contentions in the motion* . . . . . . . . . . . . . 11
   *B. Merits Of The Motion* . . . . . . . . . . . . . . . . . . . . . . . 12
      *1. Applicable standards* . . . . . . . . . . . . . . . . . . . . . . 12
      *2. "Fair and just reason" to withdraw the plea* . . . . . . . . . . . 13
         *a. Statutory definitions of "crime of violence"* . . . . . . . 13
         *b. The Supreme Court's interpretation* . . . . . . . . . . . . 15
         *c. Application of the Supreme Court's interpretation* . . . 18
            *i. Elements of the alleged "crime of violence."* . . 18
            *ii. Analysis* . . . . . . . . . . . . . . . . . . . . . . 19
         *d. Summary* . . . . . . . . . . . . . . . . . . . . . . . . 24
      *3. Additional factors* . . . . . . . . . . . . . . . . . . . . . . . 25

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Can this court entertain a criminal defendant's motion to withdraw his guilty plea, which asserts that one count of the indictment against him fails to invoke the jurisdiction of the court or to state an offense, when the motion is made for the first time on remand for resentencing? If the court can consider such a motion at this juncture, is there any merit to the defendant's contention that he should be allowed to withdraw his guilty plea to a charge of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A), on the ground that the predicate offenses alleged here, making, receiving, or possessing sawed-off and short-barreled shotguns, in violation of 26 U.S.C. §§ 5841, 5845, 5861, and 5871, are not "crimes of violence"? These intriguing questions are now before the court.

## I. INTRODUCTION

### A. Factual Background

The Eighth Circuit Court of Appeals succinctly stated the factual background to the charges on which defendant Lathan Matrell Barnett currently faces resentencing:

> On October 8, 2002, Barnett fatally shot 17-year-old Shelley Gonnerman in an apartment in Sheldon, Iowa. Barnett immediately left the apartment, but soon returned to retrieve the sawed-off shotgun that he had used to kill Gonnerman before fleeing the scene once again. Barnett later returned to the apartment a second time and led police officers to the site where he had abandoned the shotgun, which had a partially obliterated serial number. The officers then searched the

apartment, finding two additional sawed-off shotguns (including one with a completely obliterated serial number). A separate search of Barnett's apartment produced miscellaneous drug paraphernalia.

*United States v. Barnett*, 410 F.3d 1048, 1049 (8th Cir. 2005) (footnote omitted).

### B. Procedural Background

Barnett was convicted in Iowa state court of involuntary manslaughter for the killing of Ms. Gonnerman and was sentenced to five years in prison. In addition to the state manslaughter charge, Barnett was charged with several federal offenses pursuant to an initial indictment handed down on October 24, 2002.

After various motions to dismiss and various superseding indictments, a Grand Jury eventually returned a Third Superseding Indictment against Barnett on April 22, 2004, charging him with the following offenses: (1) in Count 1, using and carrying a short-barreled and shortened-length firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(A)(iii) and 924(c)(1)(B)(i), where the predicate "crime of violence" was one or more of the offenses charged in Counts 2 and 3; (2) in Count 2, making or aiding and abetting the making of one or more unregistered firearms, identified as short-barreled shotguns, in violation of 26 U.S.C. §§ 5841, 5845, 5861(f) and 5871; (3) in Count 3, receiving and possessing one or more unregistered firearms, identified as short-barreled shotguns, in violation of 26 U.S.C. §§ 5841, 5845, 5861(d) and 5871; and (4) in Count 4, possessing one or more firearms, identified as short-barreled shotguns, then being an unlawful user of controlled substances, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

On May 13, 2004, defendant Barnett appeared before United States Magistrate Judge Paul A. Zoss and entered a plea of guilty to Counts 1, 2, 3 and 4 of the Third

Superseding Indictment. On that same date, Judge Zoss filed a Report and Recommendation recommending that this court accept Barnett's guilty plea. The court accepted Barnett's plea of guilty to all four counts on May 28, 2004.

The court originally sentenced Barnett on August 4, 2004. After declaring the United States Sentencing Guidelines unconstitutional, the court sentenced Barnett to the mandatory minimum sentence of 120 months on the charge in Count 1 of "using and carrying a firearm during and in relation to a crime of violence." However, the court directed that the sentence on Count 1 be served concurrently with Barnett's Iowa state sentence for involuntary manslaughter. The court further sentenced Barnett to 36 months on each of the charges in Counts 2, 3, and 4, but directed that these sentences be served concurrently with each other and consecutively to the sentence on Count 1.

The government appealed the sentences imposed on Barnett and the Eighth Circuit Court of Appeals reversed and remanded for resentencing. *See United States v. Barnett*, 410 F.3d 1048 (8th Cir. 2005). More specifically, the appellate court held that this court had plainly erred by making the sentence on Count 1 run concurrently with the sentence on Barnett's state court conviction, because the appellate court found that doing so was contrary to 18 U.S.C. § 924(c), which "'forbids a federal district court to direct that a term of imprisonment under that statute run concurrently with any other term of imprisonment, whether state or federal.'" *Barnett*, 410 F.3d at 1050-51 (quoting *United States v. Gonzales*, 520 U.S. 1, 11 (1997)). The appellate court also found that this error seriously affected substantial rights. *Id*. at 1051. The appellate court also held that this court had imposed sentences on Counts 2, 3, and 4, that were well below the Guidelines sentencing range for those offenses without a substantial assistance motion from the government and without stating reasons for doing so. *Id*. The appellate court also found that there was grave doubt that this court would have imposed such sentences had the court

been aware of its duty to consult the Guidelines. *Id*. at 1051-52. Therefore, the appellate court reversed and remanded the case to this court "for resentencing in accordance with the views set forth in [the appellate court's] opinion and the holding in *Booker*." *Id*. at 1052.

Following remand, Barnett, who is now represented by different counsel, filed on October 7, 2005, a Motion To Withdraw Plea of Guilty To Count 1 Of The Third Superseding Indictment, which is now before the court. The government filed a timely resistance to defendant Barnett's motion.

## C. *Arguments Of The Parties*

In his motion, Barnett seeks to withdraw his guilty plea to Count 1 on the following grounds: (1) that Count 1 fails to state a crime upon which a plea could be entered, because the offense charged did not involve Barnett in a "crime of violence"; (2) that violations of 26 U.S.C. §§ 5841, 5845, 5861, and 5871 cannot be classified as "crimes of violence" as required for such violations to be predicate offenses for Count 1; (3) that Count 1 does not meet the tests of what Barnett calls "active *mens rea*" for a "crime of violence" as required by *Leocal v. Ashcroft*, 543 U.S. 1, 125 S. Ct. 377 (2004); and (4) that the plea hearing did not set forth any basis for finding that Barnett "used and carried" the short-barreled shotgun in relation to the predicate offenses, but only that Barnett "possessed" that firearm at the same time that he "possessed" other illegal firearms. Barnett asserts that his first three grounds require dismissal of Count 1 as a matter of law, and if Count 1 charged a federal offense, that his fourth ground shows that his plea was factually invalid. Barnett contends that this court can hear his motion, on remand for resentencing, because "fair and just" reasons exist to allow withdrawal of his plea, citing Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure. In essence,

Barnett contends that his motion is a challenge to the subject matter jurisdiction of the court, which can be raised at any time, even on resentencing after remand.

In response, the government contends that this court cannot hear Barnett's motion, because a defendant's guilty plea can only be set aside after sentencing on direct appeal or collateral attack, citing Rule 11(e). The government also argues that considering such a motion now would exceed the scope of the court's limited jurisdiction on remand and, in any event, that Barnett has waived his present arguments by failing to raise them on his first direct appeal. If this court were to reach the merits of Barnett's arguments, the government contends that at least one of the underlying offenses is properly considered a "crime of violence," so that there is no jurisdictional defect in Count 1 of the Indictment. The government also contends that the facts presented at Barnett's original sentencing satisfied the elements of the offense charged in Count 1.

## II. ANALYSIS

### A. Foreclosure And Waiver Of The Motion

While Barnett asserts that his motion to withdraw his guilty plea is proper under Rule 11(d)(2)(B), the government contends that his motion is foreclosed at this time by Rule 11(e). The government also contends that, even if the motion is not foreclosed, Barnett has waived the arguments he now asserts by failing to assert them prior to his first sentencing or on his first direct appeal. Thus, the court must first consider whether it can reach the merits of Barnett's motion at all, by determining whether or not the motion has been foreclosed or waived under the circumstances presented here.

### 1. *Foreclosure of the motion*

The December 2002 amendments to the Federal Rules of Criminal Procedure replaced Rule 32(e) with new subsections (d) and (e) of Rule 11.  Those subsections of Rule 11 now provide as follows:

> **(d) Withdrawing a Guilty or Nolo Contendere Plea.**
> A defendant may withdraw a plea of guilty or nolo contendere:
>> **(1)** before the court accepts the plea, for any reason or no reason; or
>> **(2)** after the court accepts the plea, but before it imposes sentence if:
>>> **(A)** the court rejects a plea agreement under Rule 11(c)(5); or
>>> **(B)** the defendant can show a fair and just reason for requesting the withdrawal.
>
> **(e) Finality of a Guilty or Nolo Contendere Plea**.
> After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.

FED. R. CRIM. P. 11(d) & (e).

Thus, pursuant to Rule 11(d), before the court imposes sentence, a defendant may move to withdraw his guilty plea on various grounds, including the one Barnett asserts here, that there is a "fair and just reason" for doing so.  *See* FED. R. CRIM. P. 11(d)(2)(B). However, under the plain and unequivocal language of Rule 11(e), a defendant may not withdraw a plea of guilty after sentence is imposed; rather, after sentencing, the validity of the plea may be challenged only on direct appeal or in a collateral attack.  *See United States v. Reyes-Contreras*, 349 F.3d 524, 525 (8th Cir. 2003) (holding that district court properly denied defendant's "motion to withdraw his plea because it was filed after sentence was imposed."); *see also United States v. Davis*, 410 F.3d 1122, 1125 (9th Cir. 2005) (noting that "[a] district court may permit a defendant to withdraw a guilty plea

before sentencing if 'the defendant can show a fair and just reason for requesting the withdrawal.' After a defendant is sentenced, however, a 'plea may be set aside only on direct appeal or collateral attack.'") (citations and footnote omitted); *United States v. Brown*, 142 Fed. Appx. 737, 738 (4th Cir. 2005) (noting that "the district court lacked authority to grant" motion to withdraw guilty plea after sentencing occurred); *United States v. Vasquez*, 121 Fed. Appx. 17, 18 (5th Cir. 2004) (holding that defendant's "post-sentencing motion to withdraw his guilty plea was unauthorized and without jurisdictional basis."); *United States v. Ortega-Ascanio*, 376 F.3d 879, 885 (9th Cir. 2004) (noting that "[w]hen a defendant moves to withdraw his plea is . . . critical. If the defendant waits until his conviction is final, the district court cannot permit withdrawal and the plea can be set aside only on direct appeal or in collateral proceedings, that is, if the plea is somehow invalid."); *United States v. Teall*, 100 Fed. Appx. 422, 423 (6th Cir. 2004) (holding that defendant could not move to withdraw her guilty plea after her sentencing). The question here is, does the appellate court's reversal and remand of Barnett's original sentence place him in the position of a defendant whose plea has not been accepted, so that Rule 11(d)(1) applies, the position of a defendant whose plea has been accepted but whose sentence has not yet been imposed, so that Rule 11(d)(2)(B) applies, or the position of a defendant whose sentence has been imposed, even though the appellate court subsequently reversed that sentence, so that Rule 11(e) applies?

The court finds nothing in the advisory comments to subsections (d) and (e) of Rule 11 or to the comparable predecessor provisions of Rule 32 that is responsive to this question. However, there is no doubt that this court has already accepted Barnett's guilty plea, and nothing in the appellate court's decision "undid" the court's acceptance of that guilty plea. Thus, Barnett does not stand in the position of a defendant who can withdraw his plea "for any reason or no reason" pursuant to Rule 11(d)(1), and Barnett does not

contend that he does. At the very least, Rule 11(d)(2)(B) applies, because Barnett's plea has been accepted, so that Barnett is required to show this court that there is a "fair and just reason" for allowing him to withdraw his plea. Although the appellate court's decision did not "undo" Barnett's plea, that decision clearly did "undo" this court's imposition of sentence, because the appellate court reversed the judgment and remanded for resentencing. *See Barnett*, 410 F.3d at 1052. Thus, logically, Barnett stands in the position of a defendant whose plea of guilty has been accepted, but whose sentence has not yet been imposed.

On the other hand, a remand for resentencing does impose some limits upon the jurisdiction of the sentencing court. Upon resentencing after remand, the court is required to "resentence a defendant in accordance with [18 U.S.C. §] 3553 and with such instructions as may have been given by the court of appeals." 18 U.S.C. § 3742(g) (adding as an exception that the court must use the Guidelines in effect at the time of the original sentencing, and ordinarily must not impose a sentence outside of the applicable Guidelines range unless the court of appeals held, in remanding the case, that a certain ground was a permissible one for departure). To put it another way, "'[o]n remand for resentencing, . . . the sentencing court is bound to proceed within the scope of any limitations imposed by the appellate court.'" *United States v. Alaniz*, 413 F.3d 877, 878 (quoting *United States v. Curtis*, 336 F.3d 666, 669 (8th Cir. 2003), with source and internal quotation marks omitted). Thus, a defendant ordinarily "may not . . . raise additional sentencing issues that were not within the scope of the appellate court's remand order." *Id*. at 879. At the same time, "[o]n remand, 'a district court may resentence a defendant on different grounds, considering different enhancements or departures, as long as they are not foreclosed by the scope of the appellate decision.'" *United States v. Bolden*, 368 F.3d 1032, 1036 (8th Cir. 2004) (quoting *United States v. Fortier*, 242 F.3d

1224, 1232 (10th Cir.), *cert. denied*, 534 U.S. 979 (2001), and citing as in accord *United States v. Evans*, 314 F.3d 329, 332 (8th Cir. 2002), *cert. denied*, 539 U.S. 916 (2003)). Consequently, the question of the scope of the district court's authority on remand for resentencing appears to be the extent to which the appellate court imposed any express limitations or expressly foreclosed consideration of any issues upon remand.

Obviously, the appellate court's instructions in this case made no mention of whether the district court could or could not consider on remand a motion by the defendant to withdraw his guilty plea, because the issue had not arisen before or during the appeal, but neither is the withdrawal of a guilty plea a "sentencing issue," at least where, as here, the basis for withdrawal of the guilty plea is the alleged failure of the Indictment to invoke the jurisdiction of the court or to state an offense. *Compare Alaniz*, 413 F.3d at 878 (the defendant may not raise on remand for resentencing additional "sentencing issues" that were not within the scope of the appellate court's decision). Here, the appellate court's remand order did not contain any foreclosing or limiting directive that would relate to Barnett's new motion to withdraw his guilty plea on the ground that Count 1 of the Third Superseding Indictment fails to invoke the court's jurisdiction or to state an offense. *Cf. Bolden*, 368 F.3d at 1036 (a district court may resentence a defendant on different grounds, as long as those grounds were not foreclosed by the scope of the appellate decision). Therefore, the court finds that its jurisdiction on remand is not so limited as to foreclose consideration of Barnett's motion to withdraw his guilty plea, at least to the extent that the motion to withdraw his guilty plea is premised on the alleged failure of Count 1 of the Third Superseding Indictment to invoke the jurisdiction of the court or to state an offense, rather than on a "sentencing issue."

### 2. *Waiver of the contentions in the motion*

Nor can the court agree with the government that Barnett has waived the argument on which he premises his motion to withdraw his guilty plea by failing to assert that argument either before his original sentencing or on his original appeal of that sentence. The government is correct that the Eighth Circuit Court of Appeals has stated that the "general rule" is "that a valid guilty plea waives all *non-jurisdictional defects*." *United States v. Beck*, 250 F.3d 1163, 1166 (8th Cir. 2001) (emphasis added). However, Barnett's argument here is precisely that the defects in Count 1 of the Third Superseding Indictment *were jurisdictional defects*, because he contends that Count 1 fails to invoke the court's jurisdiction or to state an offense. If Barnett is correct, on the face of the record, the court would have no power to enter the conviction or impose the sentence, so that a valid guilty plea would *not* foreclose an attack on the conviction. *Cf. id*. ("[A] valid guilty plea forecloses an attack on a conviction unless 'on the face of the record the court has no power to enter the conviction or impose the sentence.'") (quoting *United States v. Walker*, 115 F.3d 603, 604 (8th Cir. 1997)).

Moreover, Rule 12(b)(3)(B) states that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." FED. R. CRIM. P. 12(b)(3)(B). This case is clearly still "pending," so that it would seem that Rule 12(b)(3)(B) expressly authorizes this court's consideration of Barnett's argument that the Third Superseding Indictment fails to invoke the court's jurisdiction or to state an offense, at this or any other time. The court does not believe that Rule 12(e)—which provides that a party waives any Rule 12(b)(3) defense, objection, or request that is not raised by a deadline set by the court—is to the contrary. Rather, the *general* waiver provision in Rule 12(e) logically applies to the non-jurisdictional defenses in Rule 12(b)(3), but appears to be "trumped" by the *specific*

exception in Rule 12(b)(3)(B) for assertion of jurisdictional defenses "at any time." In any event, Rule 12(e) provides that the court may grant relief from any waiver, FED. R. CRIM. P. 12(e), and a jurisdictional challenge, such as Barnett's, presents good cause for relief from any waiver.

In short, Rule 11(e) neither forecloses Barnett from asserting, nor forecloses this court from hearing, a motion to withdraw Barnett's guilty plea on jurisdictional grounds, and Barnett has not waived that motion by failing to assert it either at his original sentencing or on his original appeal. Therefore, the court turns to the merits of Barnett's contentions that he should be allowed to withdraw his guilty plea to Count 1, because that Count fails to invoke the jurisdiction of the court or to state an offense.

### B. Merits Of The Motion

#### 1. Applicable standards

Having found that Barnett stands in the position of a defendant whose guilty plea has been accepted, but whose sentence has not yet been imposed, the court returns to the Rule 11(d)(2)(B) standards that the court finds are applicable to Barnett's motion to withdraw his guilty plea. Those standards require Barnett to show "a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B); *United States v. Mugan*, ___ F.3d ___, ___, 2006 WL 770463, *6 (8th Cir. March 28, 2006) ("The defendant bears the burden of showing fair and just grounds for withdrawal."). In addition to considering whether there is a "fair and just reason" for the defendant to be allowed to withdraw his guilty plea, "[t]he district court may also consider any assertions of legal innocence, the amount of time between the plea and the motion to withdraw, and the prejudice to the government in granting the motion." *Mugan*, ___ F.3d at ___, 2006 WL 770463 at *6; *accord United States v. Smith*, 422 F.3d 715, 721 (8th Cir. 2005); *United*

*States v. Austin*, 413 F.3d 856, 857 (8th Cir. 2005). "If a defendant fails to establish a fair and just reason for withdrawing the guilty plea, the district court need not address the remaining factors." *Smith*, 422 F.3d at 724. Also, "[g]uilty pleas should not be 'set aside lightly.'" *Id.* (quoting *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997), *cert. denied*, 522 U.S. 824 (1997)). Thus, although the "fair and just" standard is a liberal one, it does not create an automatic right to withdraw a plea. *Smith*, 422 F.3d at 723.

### 2. *"Fair and just reason" to withdraw the plea*

Barnett's first three contentions that there are "fair and just reasons" for withdrawing his guilty plea all collapse into the single contention that Count 1 of the Third Superseding Indictment does not charge an offense of "using and carrying a firearm during and in relation to a crime of violence," and thus, does not invoke the court's jurisdiction, because the predicate offenses identified—the offenses charged in Counts 2 and 3, involving violations of 26 U.S.C. §§ 5841, 5845, 5861, and 5871—are not "crimes of violence." The government asserts that Barnett is wrong.

### a. *Statutory definitions of "crime of violence"*

For purposes of the charge in Count 1, § 924(c)(3) defines "crime of violence" as an offense that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Section 16 of Title 18 of the United States Code likewise defines "crime of violence" as "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." For the sake of convenience, the court will treat

13

the definitions of "crime of violence" under § 924(c)(3) and § 16 as identical and interchangeable and will refer to the definitions under § 924(c)(3)(A) and § 16(a) as the "first statutory definition," and the definitions under § 924(c)(3)(B) and § 16(b) as the "second statutory definition."[1]

---

[1]The United States Sentencing Guidelines on the other hand, apply a similar, but not identical definition. U.S.S.G. § 4B1.2 defines "crime of violence" as an offense that either "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." The United States Sentencing Guidelines expressly recognize possession of a firearm described in 26 U.S.C. § 5845(a) as a "crime of violence." *See*, *e.g., United States v. Davila-Rodriguez*, 2006 WL 93238, *5 & n.8 (11th Cir. Jan. 13, 2006) (slip op.) (U.S.S.G. § 4B1.2(b), cmt. n.1, defines a "crime of violence" as not including "unlawful possession of a firearm by a felon, unless the possession was a firearm described in 26 U.S.C. § 5845(a), and explaining that, "[i]n amending this commentary, the Sentencing Commission explained that 'Congress has determined that those firearms described in [§ 5845(a) ] are inherently dangerous and when possessed unlawfully, serve only violent purposes.'") (quoting U.S. Sentencing Guidelines Manual app. C, Amend. 674 (2004)); *United States v. Golding*, 332 F.3d 838, 841-43 (5th Cir. 2003) (holding that unlawful possession of any "firearm" as defined in § 5845, as prohibited by § 5861(d), is a "crime of violence" within the meaning of U.S.S.G. § 4B1.2, because such weapons are "highly dangerous offensive weapons" that are regulated "in the interest of public safety," such that "the unlawful possession of any unregistered firearm, a sawed-off shotgun in this case, 'involves a substantial risk that physical force against the person or property of another' will occur") (quoting *United States v. Rivas-Palacios*, 244 F.3d 398 (5th Cir. 2001)); *United States v. Dwyer*, 245 F.3d 1168, 1172 (10th Cir. 2001) (finding that possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) qualified as a crime of violence under U.S.S.G. § 4B1.2(a) for enhancement under U.S.S.G. § 2K2.1(a)); *see also United States v. Bowers*, 432 F.3d 518, 522 (3d Cir. 2005) ("As we have stated, 'interpretation of "crime of violence" under the Sentencing Guidelines should bear upon the meaning of the term in other settings as well.'") (quoting *Royce v. Hahn*, 151 F.3d 116, 124 (3d Cir. 1998)). However, the question here is whether one of the alleged predicate offenses is a "crime of violence" within the meaning of § 924(c)(3).

### b. The Supreme Court's interpretation

Barnett contends that none of the alleged predicate offenses meets the "active *mens rea*" test established by the Supreme Court in *Leocal v. Ashcroft*, 543 U.S. 1, 125 S. Ct. 377 (2004), for a "crime of violence" under the statutory definitions. In its response, the government does not explain how the alleged predicate offenses at issue here are "crimes of violence" within the meaning of § 924(c)(3) as the Supreme Court has interpreted identical statutory language in *Leocal*; indeed, the government does not so much as cite *Leocal* in its response. Rather, the government relies on a pre-*Leocal* decision of the Ninth Circuit Court of Appeals, in which that court held that possession of an unregistered firearm, a sawed-off shotgun, in violation of 26 U.S.C. § 5861(d), was categorically a "crime of violence" for the purposes of § 924(c). *See United States v. Amparo*, 68 F.3d 1222, 1226 (9th Cir. 1995). Even though the government has missed the point, the court must consider the impact of the *Leocal* decision on the interpretation of the statutory definitions of "crime of violence."

In *Leocal*, the Supreme Court considered whether "driving under the influence (DUI)" was a "crime of violence" within the meaning of 18 U.S.C. § 16. As to the definition of "crime of violence" in § 16(a), which is identical to the definition in § 924(c)(3)(A) at issue here, the Supreme Court explained as follows:

> The critical aspect of § 16(a) is that a crime of violence is one involving the "use ⋯ of physical force against the person or property of another." (Emphasis added.) As we said in a similar context in *Bailey [v. United States]*, "use" requires active employment. 516 U.S. [137] 145, 116 S. Ct. 501 [(1995)]. While one may, in theory, actively employ something in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would "use ⋯ physical force against" another when pushing him; however,

we would not ordinarily say a person "use[s] ⋯ physical force against" another by stumbling and falling into him. When interpreting a statute, we must give words their "ordinary or natural" meaning. *Smith [v. United States*, 508 U.S. 223,] 228, 113 S. Ct. 2050 [(1993)]. The key phrase in § 16(a)—the "use ⋯ of physical force against the person or property of another"—most naturally suggests a higher degree of intent than negligent or merely accidental conduct. *See United States v. Trinidad-Aquino*, 259 F.3d, at 1145; *Bazan Reyes v. INS*, 256 F.3d [600,] 609 [(7th Cir. 2001)].

*Leocal*, 543 U.S. at 9.

Turning to the second statutory definition in § 16(b), which is identical in all pertinent respects to the definition in § 924(c)(3)(B) at issue here, the Supreme Court explained,

Section 16(b) sweeps more broadly than § 16(a), defining a crime of violence as including "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." But § 16(b) does not thereby encompass all negligent misconduct, such as the negligent operation of a vehicle. It simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense. *The reckless disregard in § 16 relates not to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime.* The classic example is burglary. A burglary would be covered under § 16(b) *not* because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.

16

*Leocal*, 543 U.S. at 10 (footnote omitted, emphasis added). Still more specifically, the Court clarified that "§ 16(b) plainly does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct," because "[t]he 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct." *Id.* at 10 n.7 (thereby distinguishing between the requirements of § 16(b) and the requirements of U.S.S.G. § 4B1.2(a)(2)). The Court explained further, as follows:

> Thus, while § 16(b) is broader than § 16(a) in the sense that physical force need not actually be applied, it contains the same formulation we found to be determinative in § 16(a): the use of physical force against the person or property of another. Accordingly, we must give the language in § 16(b) an identical construction, requiring a higher *mens rea* than the merely accidental or negligent conduct involved in a DUI offense. This is particularly true in light of § 16(b)'s requirement that the "substantial risk" be a risk of using physical force against another person "in the course of committing the offense." In no "ordinary or natural" sense can it be said that a person risks having to "use" physical force against another person in the course of operating a vehicle while intoxicated and causing injury.
>
> In construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term "crime of violence." The ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses. *Cf. United States v. Doe*, 960 F.2d 221, 225 (C.A.1 1992) (Breyer, C.J.) (observing that the term "violent felony" in 18 U.S.C. § 924(e) (2000 ed. and Supp. II) "calls to mind a tradition of crimes that involve the possibility of more closely related, active violence"). Interpreting § 16 to encompass

17

> accidental or negligent conduct would blur the distinction
> between the "violent" crimes Congress sought to distinguish
> for heightened punishment and other crimes. *See United
> States v. Lucio-Lucio*, 347 F.3d 1202, 1205-1206 (C.A.10
> 2003).

*Leocal*, 543 U.S. at 11.

> ### *c.* ***Application of the Supreme Court's interpretation***

**i.** ***Elements of the alleged "crime of violence."*** The question here is whether the predicate offenses alleged in this case, violations of 26 U.S.C. §§ 5841, 5845, 5861, and 5871, are "crimes of violence" within the statutory definition in § 924(c)(3), as the Supreme Court has interpreted the identical provisions of § 16 in *Leocal*. Thus, the court must begin by identifying the elements of the alleged "crime of violence."

The court notes that § 5841 establishes a "registration" requirement for firearms; § 5845 defines certain categories of "firearms" that must be registered pursuant to § 5841; and § 5871 defines penalties for violation of the provisions of the National Firearms Act. *See* 26 U.S.C. §§ 5841, 5845, 5871. Thus, none of these provisions actually defines an offense. On the other hand, § 5861 *does* define firearms offenses, including making, receiving, and possessing firearms in violation of the registration provisions in § 5841 or other provisions of the National Firearms Act. *See* 26 U.S.C. § 5861. The elements of possession of an unregistered firearm under 26 U.S.C. § 5861 are the following: (1) the defendant knew that he possessed the object, (2) the defendant knew the object was a firearm, (3) the firearm was capable of operating as designed, and (4) the firearm was not registered to the defendant in the National Firearms Registration and Transfer Record. *See, e.g., United States v. Dukes*, 432 F.3d 910, 915 (8th Cir. 2006) (possession of an unregistered silencer in violation of § 5861(d)).

*ii.* *Analysis*. The Supreme Court's decision in *Leocal* did not specifically address whether possession of an unregistered sawed-off or short-barreled shotgun, in violation of 26 U.S.C. § 5861, constitutes a "crime of violence" within the meaning of either § 16 or the identical provisions of § 924(c)(3). Moreover, before the Supreme Court's decision in *Leocal*, there was a split in the circuits on that question.[2] This court

---

[2] As the government notes, in *United States v. Amparo*, 68 F.3d 1222 (9th Cir. 1995), the Ninth Circuit Court of Appeals held that possession of an unregistered firearm, a sawed-off shotgun, in violation of 26 U.S.C. § 5861(d), was categorically a "crime of violence" within the meaning of § 924(c)(3)(B). *Amparo*, 68 F.3d at 1226. In so holding, the court in *Amparo* did not explain its reasoning, but instead relied on its prior holding in *United States v. Dunn*, 946 F.2d 615, 620-21 (9th Cir. 1991), that possession of an unregistered firearm, in violation of 26 U.S.C. § 5861, is categorically a "crime of violence" within the meaning of § 16(b).

In *Dunn*, the court did provide some reasoning to support its holding. The court first concluded that "[p]ossession of an unregistered firearm *does not* require the use, attempted use, or threatened use of physical force as an element of the crime, as required for enhancement under § 16(a)." *Dunn*, 946 F.2d at 621 (emphasis added). However, the court found "merit" to the government's argument that "possession of an unregistered firearm" in violation of § 5861 was a crime that, "'by its nature' involves a substantial risk of physical force against persons or property," within the meaning of § 16(b). The court continued its analysis, as follows:

> Not all firearms must be registered under 26 U.S.C. § 5861(d). Only those firearms must be registered that Congress has found to be inherently dangerous and generally lacking usefulness, except for violent and criminal purposes, such as sawed-off shotguns and hand grenades. 26 U.S.C. § 5845. The district court in *United States v. Johnson*, 704 F. Supp. 1398, reasoned that a felon in possession of a firearm, by its nature, involves a substantial risk of improper physical force under § 16(b) partly because of the blatant disregard for law displayed by an already-convicted criminal. 704 F. Supp. at 1401 (citing *United States v. Jones*, 651 F. Supp. 1309

(continued...)

must decide whether application of the Supreme Court's interpretation of the statutory definitions of "crime of violence" in *Leocal* resolves the split.

This court had found no previous decision holding that possession of an unregistered sawed-off or short-barreled shotgun, in violation of § 5861, is a "crime of violence" within the first statutory definition, that found in § 924(c)(3)(A) and § 16(a). *Compare United States v. Dunn*, 946 F.2d 615, 621 (9th Cir. 1991) (holding that "[p]ossession of an

---

<sup>2</sup>(…continued)

> (E.D.Mich.1987), *rev'd on other grounds*,846 F.2d 358 (6th Cir. 1988)). The court's reasoning also applies to the crime of possession of an unregistered firearm. The possession of an unregistered firearm of the kind defined in § 5845, even if by a non-felon, involves a similarly blatant disregard for law and a substantial risk of improper physical force. An individual who keeps a firearm of that kind for lawful purposes will recognize the need to register the weapon as evidence of lawful intent.

*Dunn*, 946 F.2d at 621. Based on this reasoning, the court affirmed the district court's holding "that possession of an unregistered firearm is presumptively evidence of unlawful violent intentions and, therefore, involves the substantial risk of violence necessary to label the possession a crime of violence under § 16(b)." *Id.*

In contrast, the Fifth Circuit Court of Appeals more recently held that "possession of a short-barrel firearm is not a § 16(b) 'crime of violence.'" *United States v. Diaz-Diaz*, 327 F.3d 410, 414 (5th Cir. 2003). The court found that "'physical force against the person or property of another need not be used to complete [that] crime.'" *Id.* (quoting *United States v. Hernandez-Neave*, 291 F.3d 296, 299 (5th Cir. 2001). Instead, the court found, the offense "is complete upon, *inter alia*, mere knowing possession of the weapon." *Id.* The court rejected its prior holding, in *United States v. Rivas-Palacios*, 244 F.3d 396, 398 (5th Cir. 2001), that possession of a sawed-off shotgun *is* a § 16(b) "crime of violence," because that prior holding had not applied the "categorical" methodology that another panel of the court had established just days earlier for determining whether or not an offense is a "crime of violence." *Id.* (citing *United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001), as establishing the "categorical" methodology).

unregistered firearm does not require the use, attempted use, or threatened use of physical force as an element of the crime, as required for enhancement under § 16(a)," but does fit the definition of a "crime of violence" under § 16(b)). Indeed, this court has considerable doubt that possession of an unregistered sawed-off or short-barreled shotgun meets the necessary "use" or "threatened use" requirements found in the first statutory definition of a "crime of violence," because such an offense lacks the "active employment" or "actual application of physical force" requirements that the Supreme Court in *Leocal* read into the first statutory definition, *see Leocal*, 543 U.S. at 10-11, even if merely possessing, receiving, or making such a weapon carries with it some inherent risk of danger to others. The offense of possessing (or making or receiving) an unregistered sawed-off or short-barreled shotgun requires only "possession" (or "making" or "receiving") not any form of "active employment." *See, e.g., Dukes*, 432 F.3d at 915 (stating the elements of possession of an unregistered silencer in violation of § 5861(d)). Nevertheless, the court need not decide whether the predicate offenses alleged here are "crimes of violence" within the first statutory definition, because the Supreme Court has recognized that the second statutory definition of "crime of violence," under § 16(b) and § 924(c)(3)(B), "sweeps more broadly than" the first statutory definition, in the sense that physical force need not actually be applied. *Leocal*, 543 U.S. at 10-11. Thus, if possessing (or making or receiving) an unregistered sawed-off or short-barreled shotgun is not a "crime of violence" within the second statutory definition, it necessarily is not a "crime of violence" within the first statutory definition.

Turning to the second statutory definition of "crime of violence"—an offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," 18 U.S.C. § 924(c)(3)(B)—the court notes that numerous courts and Congress have recognized that

sawed-off or short-barreled shotguns are highly or inherently dangerous offensive weapons, with no usefulness other than for violent purposes. *See, e.g., United States v. Golding*, 332 F.3d 838, 841-43 (5th Cir. 2003) (holding that unlawful possession of any "firearm" as defined in § 5845, as prohibited by § 5861(d), is a "crime of violence" within the meaning of U.S.S.G. § 4B1.2, because such weapons are "highly dangerous offensive weapons" that are regulated "in the interest of public safety," such that "the unlawful possession of any unregistered firearm, a sawed-off shotgun in this case, 'involves a substantial risk that physical force against the person or property of another' will occur") (quoting *United States v. Rivas-Palacios*, 244 F.3d 398 (5th Cir. 2001)); *United States v. Dwyer*, 245 F.3d 1168, 1172 (10th Cir. 2001) (finding that possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) qualified as a crime of violence under U.S.S.G. § 4B1.2(a) for enhancement under U.S.S.G. § 2K2.1(a)); *United States v. Fortes*, 141 F.3d 1, 7-8 (1st Cir.) (holding that possession of a sawed-off shotgun under 26 U.S.C. § 5861(d) is a "crime of violence" within the meaning of U.S.S.G. §§ 4B1.1 and 4B1.2 and noting that Congress found certain firearms-sawed-off shotguns and grenades to be inherently dangerous and lacking in usefulness other than for violent and criminal purposes), *cert. denied*, 524 U.S. 961 (1998); *Amparo*, 68 F.3d at 1226 (holding that possession of an unregistered firearm, a sawed-off shotgun, was categorically a "crime of violence" for the purposes of § 924(c)); *United States v. Dunn*, 946 F.2d 615, 620-21 (9th Cir. 1991) (concluding that the possession of an unregistered firearm of the kind defined in 26 U.S.C. § 5845 is categorically a "crime of violence" for purposes of § 16(b)). The court recognizes, further, that possessing (or making or receiving) an unregistered firearm of the kind defined in § 5845, even by a non-felon, involves a blatant disregard for law and a substantial risk of use of improper physical force, and "that possession of an unregistered firearm is presumptively evidence of unlawful violent

intentions." *Dunn*, 946 F.2d at 621.   Under *Leocal*, however, these are not the standards for determining whether possessing (or making or receiving) such an unregistered weapon is a "crime of violence" under the second statutory definition.

Rather, as the Supreme Court made clear in *Leocal*, under the second statutory definition, "[t]he reckless disregard . . . relates not to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another *might be required in committing a crime.*" *Leocal*, 543 U.S. at 10 (emphasis added).   As the Fifth Circuit Court of Appeals has observed, the offense of possession of an unregistered sawed-off or short-barreled shotgun "is complete upon, *inter alia*, mere knowing possession of the weapon." *United States v. Diaz-Diaz*, 327 F.3d 410, 414 (5th Cir. 2003).   Indeed, "'physical force against the person or property of another need not be used to complete [that] crime.'" *Id.* (quoting *United States v. Hernandez-Neave*, 291 F.3d 296, 299 (5th Cir. 2001)).   To put it another way, there may be a risk that physical force will be used against another inherent in a person's possession of an unregistered sawed-off or short-barreled shotgun, but there is no such risk that use of physical force against another might be required *in committing the crime of possession of the unregistered weapon. Leocal*, 543 U.S. at 10 (emphasis added); *see also id.* at 11 (noting that § 16(b) "require[s] that the 'substantial risk' be a risk of using physical force against another person 'in the course of committing the offense'").   Again, "[t]he 'substantial risk' in [the second statutory definition] relates *to the use of force*, not to the possible effect of a person's conduct," *Id.* at 10 n.7 (emphasis added), and here, there is no "substantial risk" of "use of force" to commit the "possession" offense, even if the "possession" of the unregistered firearm, in turn, has the possible effect of creating a substantial risk of use of force by the possessor against others.   This is equally true of "making" and "receiving" unregistered firearms, because "making" and "receiving"

23

offenses are also complete upon the mere "making" or "receiving" of the unregistered firearm; these offenses also do not involve any risk that use of physical force against another might be required *in committing the crime of making or receiving the unregistered weapon*. *Id*. Thus, "[i]n no 'ordinary or natural' sense can it be said that a person risks having to 'use' physical force against another person in the course of" merely possessing (or making or receiving) an unregistered sawed-off or short-barreled shotgun. *See id*. at 11. A mere "possession" (or "making" or "receiving") offense, even one involving an item that is inherently dangerous or that has no use other than to commit violence against others, simply does not fit within the category of "violent, *active* crimes" that is defined by the "crime of violence" statutes, because the mere "possession" (or "making" or "receiving") of such an object is "passive" as to the use of physical force in the commission of the offense itself. *Id*. (emphasis added).

Consequently, an offense of possessing (or making or receiving) an unregistered sawed-off or short-barreled shotgun, in violation of § 5861, is *not* a "crime of violence" within the meaning of § 924(c)(3).

### d.   Summary

It follows from the court's conclusion that possessing (or making or receiving) an unregistered sawed-off or short-barreled shotgun, in violation of § 5861, is *not* a "crime of violence" within the meaning of § 924(c)(3), as the Supreme Court has interpreted identical statutory language in *Leocal*, that Barnett has shown "fair and just reason" to withdraw his guilty plea to Count 1 of the Third Superseding Indictment. FED. R. CRIM. P. 11(d)(2)(B) (the "fair and just" standard applies to withdrawal of a guilty plea after the plea is accepted, but before sentence is imposed); *Mugan*, ___ F.3d at ___, 2006 WL 770463 at *6 ("The defendant bears the burden of showing fair and just grounds for withdrawal."). This is so, because Count 1 of the Third Superseding Indictment fails to

invoke the court's jurisdiction over a federal offense, in that it fails to state an offense of using or carrying a firearm during and in relation to a crime of violence in violation of § 924(c)(1)(A), where no predicate "crime of violence" has been identified or charged.

### 3.  *Additional factors*

Having found "fair and just reason" for withdrawal of Barnett's plea, the court turns briefly to consideration of other pertinent factors. *Smith*, 422 F.3d at 723 (although the "fair and just" standard is a liberal one, it does not create an automatic right to withdraw a plea). In addition to considering whether there is a "fair and just reason" for the defendant to be allowed to withdraw his guilty plea, "[t]he district court may also consider any assertions of legal innocence, the amount of time between the plea and the motion to withdraw, and the prejudice to the government in granting the motion." *Mugan*, ___ F.3d at ___, 2006 WL 770463 at *6; *accord Smith*, 422 F.3d at 721; *Austin*, 413 F.3d at 857.

Here, Barnett does assert his "legal innocence" to Count 1, because he asserts, as a matter of law, that he has not been charged with a legally sufficient predicate "crime of violence." *Id.* (the court should also consider any assertion of "legal innocence"). The court concedes that there has been a very substantial amount of time between Barnett's original plea, on May 13, 2004, and the assertion of his motion to withdraw his plea, filed on October 7, 2005. *Id.* (another factor is the amount of time between the plea and the motion to withdraw it). However, the court finds that this substantial period of time was occupied with Barnett's direct appeal of his original sentence and, more importantly, the court finds that the lag is of considerably less importance than it might be if Barnett's motion did not assert that the indictment fails to invoke the court's jurisdiction or to state an offense. Because Barnett's motion does make such assertions, the court finds that Barnett is entitled to make them "at any time." *See* FED. R. CRIM. P. 12(b)(3)(B) ("[A]t any time while the case is pending, the court may hear a claim that the indictment or

information fails to invoke the court's jurisdiction or to state an offense."). Finally, the government is undoubtedly "prejudiced" in its prosecution of Count 1 by granting Barnett's motion, *see Mugan*, ___ F.3d at ___, 2006 WL 770463 at *6 (the final consideration is "prejudice" to the government of allowing the defendant to withdraw his guilty plea), because it cannot now pursue that prosecution, but the court cannot find the sort of "prejudice" that would weigh against granting the motion. The government's interests are also served when justice is done, and prosecution of a defendant on a legally insufficient charge that fails to invoke the court's jurisdiction over a federal offense plainly would not serve the interests of justice.

Therefore, the court finds that all pertinent considerations weigh in favor of granting Barnett's motion to withdraw his plea of guilty to Count 1 of the Third Superseding Indictment. Still further, because the court finds that Barnett must be allowed to withdraw his guilty plea to Count 1, where that Count fails to invoke the court's jurisdiction or to state an offense, the court finds that it does not have jurisdiction over Count 1 of the Third Superseding Indictment, and that count must be dismissed.[3]

### III. CONCLUSION

Upon the foregoing, defendant Barnett's October 7, 2005, Motion To Withdraw Plea of Guilty To Count 1 Of The Third Superseding Indictment (docket no. 125) is **granted**. Moreover, because Count 1 of the Third Superseding Indictment fails to invoke

---

[3]Because the court finds that the charge in Count 1 fails to invoke the court's jurisdiction or to state an offense, and consequently must be dismissed, the court does not reach Barnett's fourth contention, that the plea hearing did not set forth any factual basis for finding that Barnett "used and carried" the short-barreled firearm in relation to the predicate offenses, but only that Barnett "possessed" that firearm at the same time that he "possessed" other illegal firearms.

the court's jurisdiction and fails to state an offense, that Count is hereby **dismissed**. The court will set a resentencing hearing on the remaining counts by separate order.

**IT IS SO ORDERED.**

**DATED** this 5th day of April, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA